# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE AT KNOXVILLE

GREG ADKISSON, et al., )
      Plaintiffs, )
v. ) No. 3:13-CV-00505-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
      Defendant. ) *Lead case consolidated with*
_____ )

KEVIN THOMPSON, et al., )
      Plaintiffs, )
v. ) No. 3:13-CV-00666-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
      Defendant. )
_____ )

JOE CUNNINGHAM, et al., ) *as consolidated with*
      Plaintiffs, )
v. ) No. 3:14-CV-00020-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
      Defendant. )
_____ )_____

BILL ROSE, )
      Plaintiff, )
v. ) No. 3:15-CV-00017-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
      Defendant. )
_____ )

CRAIG WILKINSON, et al., )
      Plaintiffs, )
v. ) No.: 3:15-CV-00274-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
      Defendant. )
_____ )

ANGIE SHELTON, as wife and next of kin )
on behalf of Mike Shelton, et al., )
      Plaintiffs, )
v. ) No.: 3:15-CV-00420-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
      Defendant. )
_____ )

JOHNNY CHURCH, )
      Plaintiff, )
v. ) No.: 3:15-CV-00460-TAV-HBG
JACOBS ENGINEERING GROUP, INC., )
      Defendant. )

1

DONALD R. VANGUILDER, JR.,       )
      Plaintiff,                         )
v.                                               )      No. 3:15-CV-00462-TAV-HBG
JACOBS ENGINEERING GROUP, INC.,  )
      Defendant.                         )
_____ )
JUDY IVENS, as sister and next of kin,  )
on behalf of JEAN NANCE, deceased,      )
      Plaintiff,                         )
v.                                               )      No. 3:16-CV-00635-TAV-HBG
JACOBS ENGINEERING GROUP, INC.,  )
      Defendant.                         )
_____ )
PAUL RANDY FARROW,               )
      Plaintiff,                         )
v.                                               )      No. 3:16-CV-00636-TAV-HBG
JACOBS ENGINEERING GROUP, INC.,  )
      Defendant.                         )
_____ )

## PLAINTIFFS' MOTION TO IMPOSE SANCTIONS

COME NOW Plaintiffs, by and through counsel, and hereby respectfully move the Court for an order to impose sanctions for Defendant Jacobs Engineering Group, Inc.'s ("Jacobs"), failure to comply with the Court's November 23, 2019 Order requiring that Jacobs provide a witness to testify at a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). ECF No. 702 (the "Rule 30(b)(6) Order"). Plaintiffs move the Court pursuant to Federal Rule of Civil Procedure 37(b), for Jacobs' contumacious conduct in refusing to provide such a properly prepared witness at the time scheduled by the parties for the deposition that stands in direct violation of this Court's order.

## INTRODUCTION

"It would be difficult, indeed, for the court to expect attorneys to follow its orders if all it took to justify ignoring them was to say that it 'was due to inadvertence and mistake.' Attorneys have not only a duty to comply with orders of the court, but also a right to expect other attorneys

to do the same." *Knudson v. Wachovia Bank, N.A*., No. 2:07cv608-WHA (WO), 2008 U.S. Dist. LEXIS 48165, at *4 (M.D. Ala. June 23, 2008). By denying Plaintiffs the Rule 30(b)(6) deposition ordered by the Court based on its claimed re-interpretation of Order's plain language, Jacobs attempts to secure for itself an opportunity here to argue a motion to reconsider the Court's denial of its motion for a protective order and to raise a *new* issue it should have included in that motion. As a result, the Plaintiffs are forced to file the present motion to fend off Jacobs' repeated effort to evade its obligation to provide a corporate witness pursuant to a properly served notice under Rule 30(b)(6).

## **RELEVANT FACTS**

Because the parties already fully briefed the facts and procedural history regarding the efforts to obtain the 30(b)(6) deposition in relation to Jacobs' Motion for a Protective Order, *e.g.*, ECF Nos. 649, 681, 694, Plaintiffs will not repeat that history and instead incorporate those filings here by specific reference. Plaintiffs will only highlight facts directly relevant to this Motion:

1.      On October 15, 2020, Plaintiffs properly served their Second Amended Notice of Deposition(s) of Defendant Jacobs Engineering Group, Inc., Taken Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. ECF No. 627.

2.      On October 22, 2020, Jacobs filed its Motion for a Protective Order Regarding Rule 30(b)(6) Deposition. ECF No. 649. In its Motion, Jacobs argued: (1) "[t]he Court should order that Jacobs may respond to Plaintiffs' third amended Rule 30(b)(6) notice ([ECF No.] 627) *by designating relevant portions of prior trial and deposition testimony, as well as documents, as its corporate testimony* on many of the topics noticed and respond on the remaining topics through written interrogatories." *Id*. at 5-6 (emphasis added). Jacobs repeated this argument in its Reply. "Jacobs' proposed plan of *designating testimony and responding to written interrogatories* is

appropriate under the law and particularly well suited to the topics identified by Plaintiffs." ECF No. 694, at 3 (emphasis added).

3.    After briefing was completed and upon consideration of Jacobs' arguments, the Court issued its Memorandum and Order, ECF No. 702 ("Rule 30(b)(6) Order"), on November 23, 2020, expressly stating:

> Ultimately, the Court is unable to discern whether the proposed prior testimony would render the noticed topics duplicative or superfluous at this time in a Rule 30(b)(6) deposition. Therefore, the Court finds that *it would be improper to allow Defendant to designate prior deposition or trial testimony as corporate testimony under Rule 30(b)(6) at this time, and Defendant's request for a protective order will be denied as to Topics 1-5, 7-9, and 12.*

*Id*. at 7-8 (citation omitted, emphasis added). The Court went on the concluded that

> the remaining noticed deposition topics are relevant under Fed. R. Civ. P. 26(b)(1) and proper for a Rule 30(b)(6) deposition. Defendant has failed to establish that it would be unable to prepare a witness on these noticed topics and has not demonstrated that these topics are more appropriately addressed through written interrogatories. Therefore, *Defendant's request for a protective order will be denied with respect to Topics 6, 10, 11, 13, 15, 18, 19, and 22.*

*Id.* at 12 (citations omitted, emphasis added).

4.    On November 24, 2020—one day after the Court issued the Rule 30(b)(6) Order— Jacobs' counsel sent correspondence to Mr. Coleman and Mr. Ringger in which it completely ignored the express language quoted above.

> I write in response to the Court's order from yesterday granting in part and denying in part Jacobs' request for a protective order regarding Plaintiffs' third amended Rule 30(b)(6) deposition notice. Doc. 702. In accordance with that order, *Jacobs has attached a chart identifying the testimony and documents it intends to adopt as its corporate testimony on Topics 1-5, and 7-9.*

Nov. 24, 2020 Correspondence between Counsel (emphasis added) (attached as **Exhibit A**).

5.      Puzzled by this correspondence in light of the express language in the Rule 30(b)(6) Order, Plaintiffs responded to it on December 2, 2020 by simply stating they intended to move forward with the 30(b)(6) deposition as directed by the Court.[1]

> *As you know, the Court has ordered the parties to move forward with Plaintiffs' Rule 30(b)(6) deposition.* This is to inform you that Plaintiffs intend to conduct this deposition in early January 2021 on one of the following two dates: Friday, January 8, 2021, or Monday, January 11, 2021, whichever is preferable to you and Jacobs' corporate representative.
>
> Please note that in accordance with the Court's Order, *Plaintiffs expect Jacobs to produce a corporate representative adequately prepared to provide substantive responses to deposition questions on all topics identified in Plaintiffs' third amended Rule 30(b)(6) notice, with the exception of topics 14, 16, 20, and 21, which Jacobs may answer in written form.* Plaintiffs request, pursuant to the Court's Order, that Jacobs provide these written answers to topics 14, 16, 20, and 21 on the day of the Rule 30(b)(6) deposition.
>
> Please let us know by close of business Friday, December 11, 2020, which of the above two dates is preferable for conducting this Rule 30(b)(6) deposition.

Dec. 2, 2020 Correspondence between Counsel, Ex. B (emphasis added).

6.      Jacobs responded: "Subject to the Court's Nov. 23 order and our correspondence of Nov. 24, Jacobs' 30(b)(6) witness is available for a remote deposition on Jan. 20 or 21, beginning at 9 am central time. Jacobs agrees to your proposal to provide written responses to Topics 14, 16, 20 and 21 on the day of the deposition." Dec. 3, 2020 Email between Counsel (attached as **Exhibit C**).

---

[1] Because the November 24, 2020 correspondence, Ex. A, had not been addressed to him, Mr. Silvey did not recall seeing the attachment Jacobs included with its correspondence. Terry Hagen Dep. ("Hagen Dep."), Jan. 21, 2021, 33:25-34:7 (Transcript attached as **Exhibit D**). Mr. Ringger reviewed the November 24, 2020 correspondence and accompanying attachment when it was received from Jacobs' counsel. He told Mr. Silvey that he had received the correspondence. After further discussion, it was agreed that Plaintiffs' counsel would respond by stating their expectation that Jacobs produce a witness adequately prepared to provide substantive testimony on the topics allowed by the Court in light of the express language of the Court's Rule 30(b)(6) Order. Dec. 2, 2020 Correspondence between Counsel (attached as **Exhibit B**). No further correspondence or explanation was deemed necessary. *See* Declaration of Louis W. Ringger, III.

5

7.      On January 21, 2021 counsel for all parties appeared for a virtual deposition. Shortly after it commenced, Jacobs' counsel indicated that the proffered witness would simply be referring to prior testimony designations for Topics 1 through 9. Jan. 21, 2021 Hagen Deposition Notes (attached as **Exhibit E**). Counsel also indicated that—for the first time—Jacobs would be refusing to provide *any* response to questions concerning Topic 10 on the basis of a blanket assertion of attorney-client privilege and work-product.

8.      In light of Jacobs' refusal to comply with the Court's clear directions in its Rule 30(b)(6) Order, Plaintiffs' counsel suspended the deposition in order to bring the matter before the Court by telephone. The Court's staff indicated that the Magistrate was, and would be, unavailable for some time, and all parties agreed that the best way to address this issue would be for Plaintiffs to file the present motion utilizing an accelerated briefing schedule.

## LEGAL STANDARD

In its Rule 30(b)(6) Order, the Court articulated the general standards under which the present issue must be analyzed.

> The deposition of a corporate representative is governed by Rule 30(b)(6), which provides, in relevant part, as follows:
>
>> The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation.
>> The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.
>
> Fed. R. Civ. P. 30(b)(6). A Rule 30(b)(6) witness differs from a mere corporate employee because, unlike an individual witness, the testimony of a Rule 30(b)(6) witness represents the knowledge of the corporation and testimony under the rule binds the corporation. Prior deposition testimony from individual fact witnesses does not relieve a corporation from designating a corporate spokesperson in response to a Rule 30(b)(6) notice of deposition.

6

Rule 30(b)(6) Order, at 5 (internal punctuation and citations omitted).

## ARGUMENT

## I.     CONDUCT JUSTIFYING THE IMPOSITION OF SANCTIONS

### A.     Jacobs' Renewed Effort to Substitute Prior Testimony in Place of a Live Witness Intentionally Defies the Court's Rule 30(b)(6) Order.

Plainly stated, the Rule 30(b)(6) Order is clear: it denies both Jacobs' request to simply designate prior testimony and its request to respond through written interrogatories. Rule 30(b)(6) Order 7-8, 12. While the Court's order should have concluded litigation on this issue, it did not. Instead, Jacobs' counsel has brazenly disregarded the Court's clear direction. Shortly after the Court issued its order, Jacobs' counsel raised objections to Plaintiffs' proffered Rule 30(b)(6) topics—the same topics which the Court already considered and upon which it already ordered Jacobs to present a witness for deposition. Ex. A. As this Court is well-aware, *nothing* in the Rule 30(b)(6) Order authorized—either expressly or impliedly—Jacobs' counsel to take such an action.

Jacobs and its counsel were under a duty to comply with the Court's Rule 30(b)(6) Order. *See, e.g.*, *SEC v. Knoxville, LLC*, 895 F. Supp. 192, 194 (E.D. Tenn. 1995) ("Counsel were under a duty to comply with the subpoena, which was an order of the court, to the fullest limit consistent with any applicable privilege."); *cf. Smotherman v. Galardy*, No. 4:16-CV-88-TAV-SKL, 2020 U.S. Dist. LEXIS 142662, at *1 (E.D. Tenn. Aug. 10, 2020) ("Rule 41(b) of the Federal Rules of Civil Procedure gives this Court the authority to dismiss a case for 'failure of the plaintiff . . . to comply with . . . any order of the court.'"). Rather than complying with this duty, Jacobs instead chose to willfully and improperly reinterpret the Rule 30(b)(6) Order in a fashion more to its liking, even though its artificial interpretation stood in stark contrast to the Order's plain language. The Court cannot, and should not, countenance such disrespect of its authority.

7

Jacobs will likely argue that it merely interprets the Rule 30(b)(6) Order differently from Plaintiffs. For example, Jacobs may cite the Court's use of the phrase "at this time" as a way to argue that it reasonably interprets the Court to permit its obstructive noncompliance. But such arguments are nothing more than efforts to distort and subvert the plain language of the Rule 30(b)6) Order. Here, the Court's use of the phase "at this time" indisputably demonstrates nothing other than that Jacobs failed to provide a sufficient basis for the relief it sought in its Motion for a Protective Order. Had the Court actually intended only to deny Jacobs its requested relief "at this time," while permitting it to re-submit specific prior testimony designations for consideration at a later time, it would have clearly stated so—as it did elsewhere in this litigation.[2] Of course, the Court did not do so.

Jacobs cannot unilaterally grant itself the relief the Court already denied by attempting to rewrite the Rule 30(b)(6) Order to its benefit. Jacobs is not permitted a "second bite at the apple" merely because it claims to interpret a plainly written order differently from Plaintiffs. Jacobs asked to rely on prior testimony and written documents for the deposition and that request was denied. "Rule 30(b)(6) means what it says. Corporations must act responsively; they are not entitled to declare themselves mere document-gatherers. They must produce live witnesses who know or who can reasonably find out what happened in given circumstances." *Wilson v. Lakner*, 228 F.R.D. 524, 530 (D. Md. 2005). This Court carefully considered the parties' briefing, carefully

---

[2] *E.g.*, Memorandum and Order on Plaintiffs' Motion for Protective Order at 5, ECF No. 583 ("The Court cannot set forth the limitations proposed in the protective order, which will limit relevant inquiry by Defendants—in advance of the depositions—based on Plaintiffs' arguments *at this time*. However, *Plaintiffs shall be granted leave to refile their motion* for a protective order *at a later time*, which will allow the Court to consider a record of the challenged deposition topics in support of their arguments.") (emphasis added).

8

reviewed the applicable law, and carefully and thoughtfully wrote and issued its Rule 30(b)(6) Order. Plaintiffs ask that the Court simply enforce the clear directions of this already-clear Order.

### B.     Jacobs' Proposed Prior Testimonial Designations Do Not Address the Noticed Deposition Topics.

Jacobs repeatedly chastised Plaintiffs at the time of the deposition for failing to review its proposed designations.[3] Even if the Court were to find that Jacobs' renewed submission of proposed testimonial designations were authorized, a review of the designations reveals that the testimony does not—and cannot—properly address the topics in the Second Amended Notice of Deposition, ECF No. 627. The testimony and exhibits Jacobs references were made under materially different circumstances in the Phase I trial and by individuals who did not and cannot speak authoritatively from a corporate perspective about the subject areas in the designated topics. Jacobs apparently fears further inquiry on these issues because the evidence gathered from the 30(b)(6) deposition regarding its off-site, corporate-level acts and omissions will be even more detrimental that what was revealed by its on-site employees during the Phase I trial. But these are the precise reasons why it is essential that the Court enforce its Rule 30(b)(6) Order.

As the Court is well-aware, the issue of punitive damages was reserved for Phase II in this case. Order at 7, ECF No. 136. Tennessee law requires Plaintiff to prove "by clear and convincing evidence that the defendant against whom punitive damages are sought acted maliciously, intentionally, fraudulently or recklessly[.]" Tenn. Code Ann. § 29-39-104(a)(1). In order to fulfill their evidentiary burden, Plaintiffs are entitled to offer evidence on a number of specific issues. The statute states in relevant part:

> In all cases involving an award of punitive damages, the trier of fact, in determining the amount of punitive damages, shall consider, to the extent relevant, the following: . . . *the nature and reprehensibility of the defendant's wrongdoing*; *the*

---

[3] Hagen Dep., Ex. D, 31:20-32:16; 34:12-35:12; 36:1-6; 37:18-38:1; 40:21-41:4; 48:18-49:20.

9

> *impact of the defendant's conduct on the plaintiff; . . . defendant's awareness of the amount of harm being caused and the defendant's motivation in causing such harm; the duration of the defendant's misconduct and whether the defendant attempted to conceal such misconduct . . . whether the defendant profited from the activity, and if defendant did profit, whether the punitive award should be in excess of the profit in order to deter similar future behavior; ., . . . and any other circumstances shown by the evidence that bear on determining a proper amount of punitive damages.*

Tenn. Code Ann. § 29-39-104(a)(4) (emphasis added). These subjects are all within the scope of the noticed Topics 1 through 10. *See* Pls.' Second Am. Notice of Dep., ECF No. 627. While there was testimony (and other evidence) introduced during the Phase I trial from some of Jacobs' *on-site employees* that touched on some of these issues, there was no testimony or other evidence whatsoever regarding Jacobs' misconduct at a *corporate level* off-site. Establishing Jacobs' corporate malfeasance and/or failures in corporate oversight of the on-site employees is wholly material to Plaintiffs' claim for punitive damages in Phase II and must be investigated through a properly prepared corporate representative during a Rule 30(b)(6) deposition.

Instead, Jacobs proposes relying exclusively on the prior testimony of four individuals: Tom Bock, Sean Healy, Jack Howard, and Chris Eich. These individuals were on-site officials for Jacobs who testified during the Phase I trial about what went on at the Kingston Site. These individuals' knowledge about *corporate* acts and omissions during Phase I was not relevant at that time, as punitive damages was reserved for Phase II. This reality underpins the importance of Plaintiffs now being allowed to depose a true corporate representative. The essential desire of Jacobs' obstruction is to deny Plaintiffs the opportunity to explore these topics through deposition of a corporate representative because Plaintiffs did not, and could not, do so during Phase I. The Court obviously rejected that goal in ordering the Rule 30(b)(6) deposition to move forward.

Moreover, even if Jacobs' proposed on-site employees could have given additional testimony about issues relevant to corporate actions, omissions, knowledge, and other issues

relating to punitive damages, the Court granted Jacobs' motion for a protective order denying Plaintiffs an opportunity to further depose Tom Bock, Sean Healy, Jack Howard, and Chris Eich for purposes of the issues (including punitive damages) unique to Phase II. ECF No. 665. Thus, the only way forward is for the Court to enforce its Rule 30(b)(6) Order.

### C. Jacobs Improperly Asserted a Blanket Claim of Privilege.

#### 1. Jacobs waived any claim of privilege regarding noticed Topic 10.

Nowhere in either its original Motion for a Protective Order, ECF No. 649, or its Reply brief, ECF No. 694, did Jacobs assert any claim of privilege regarding *any* of the noticed topics, including Topic 10. However, during the deposition on January 21, 2021, its counsel advised that Jacobs was refusing to produce any response to Topic 10 on the basis of attorney-client privilege.

> Q. Number 10, "Any disciplinary actions, investigations or contemplated investigations by Jacobs or any federal or state governmental agencies, including any debarment investigation or proceeding, concerning acts or omissions of Jacobs' employees regarding their failure to provide job site safety, personal breathing protection, and protection of workers' health during the Kingston Ash Recovery Project."
>
> Are you prepared to testify about that topic today?
>
> MR. MODLIN: And here we'll object that to the extent there's any responsive information to this topic, it's privileged and so we are not designating him to testify on that topic.
>
> MR. SILVEY: Okay. You are aware that that topic was included in the court's order on this issue?
>
> MR. MODLIN: We are objecting on grounds of privilege. The court did not address --
>
> MR. SILVEY: On grounds of attorney -- on grounds of attorney-client privilege?
>
> MR. MODLIN: Excuse me. Please let me finish. The court did not address any claim of privilege in its order. And, yes, it's both attorney-client privilege and work product.
>
> MR. SILVEY: So he will not be testifying as to Topic Number 10?

11

MR. MODLIN: Correct.

Hagen Dep., Ex. D, 23:17-24-22. Jacobs' counsel was, of course, correct that the Court "did not address any claim of privilege in its order"—because the issue was *never raised*. Jacobs therefore waived any such privilege argument. Jacobs could and should have raised any issue regarding privilege or work-product in reference to Topic 10 as part of its Motion for a Protective Order. Instead, its omission prevented Plaintiffs from timely addressing the privilege claim with the Court *prior to the commencement of the deposition*. Instead, Plaintiffs must address this new issue now. This, in turn, unnecessarily compounds the litigation, prolongs the discovery process, and wastes the time and resources of the parties and the Court. The Court should deny Jacobs' untimely attempt to now raise new claims of privilege.

### 2. Jacobs' counsel's blanket claim of privilege is improper.

Even if the Court does not agree that Jacobs' belated claim of privilege was waived for failing to raise the issue in its Motion for a Protective Order, its tactic of ambushing Plaintiffs during the deposition with a blanket assertion of attorney-client privilege and work-product fails on its merits and should be prohibited, as many other courts have done. For example, under a similar fact situation, one court explained:

> Thus, the crux of BD's refusal to produce a witness is its contention that Topics 6, 7, and 8 "invade BD's privileged communications and work product" by seeking testimony that "relates entirely to the legal analysis and opinions of BD's counsel" (Def.'s Opp'n to Pl.'s Revised 3d Mot. to Compel, at 1, 7). BD's argument, however, assumes that every question within the scope of Topics 6, 7, and 8 that would be asked by Baxter would seek privileged information. This is speculation: the topics at issue are not drafted in such a way that questions within their scope would inevitably seek privileged information. *See Cotton v. Costco Wholesale Corp.*, No. 12-2731-JWL, 2013 U.S. Dist. LEXIS 103367, 2013 WL 3819975, at *4 (D. Kan. July 24, 2013) (where deposition topics did not, "on their face, call for testimony that would be protected from disclosure," it was "speculative to prohibit inquiry into this subject matter on the basis that [the plaintiff's] counsel could potentially ask a question regarding privileged information"); *see also SEC v.*

*Merkin*, 283 F.R.D. 689, 695 (S.D. Fla. 2012) (noting, in the context of Rule 30(b)(6) depositions of government agencies, that "several district courts . . . have rejected sweeping arguments that a deposition could not go forward because of the *possibility* that some questions might seek protected information" (emphasis in original)). Although Baxter's attorneys certainly could ask questions within the bounds of Topics 6, 7, and 8 that seek privileged information, this is true for many Rule 30(b)(6) topics that could be propounded by a party.

*Baxter Int'l, Inc. v. Becton, Dickinson & Co*., No. 17 C 7576, 2019 U.S. Dist. LEXIS 125098, at *20-21 (N.D. Ill. July 26, 2019). The courts in all three Tennessee Districts embrace the principle articulated in *Baxter* that a blanket, preemptive assertion of privilege is improper. *E.g.*, *Wyndham Vacation Ownership, Inc. v. Vacation Transfers Unlimited, LLC*, No. 3:18-cv-01399, 2020 U.S. Dist. LEXIS 4973, at *8 (M.D. Tenn. Jan. 10, 2020) ("Blanket assertions of protection under either the attorney-client privilege or work product protection are ineffective to preserve these protections."); *Draper v. Univ. of Tenn.*, No. 1:08-cv-01125-JDB, 2010 U.S. Dist. LEXIS 140771, at *6-7 (W.D. Tenn. Apr. 13, 2010) ("While it does appear to the Magistrate Judge that some of the subjects and documents requested fall within the attorney-client privilege or work product doctrine, the claim of privilege  cannot be a blanket claim; it must be made and sustained on a question-by-question or document-by-document basis." (internal quotation marks omitted)); *Gaiter v. Aero. Testing All.*, No. 4:06-CV-47, 2007 U.S. Dist. LEXIS 113122, at *9 (E.D. Tenn. Jan. 16, 2007) ("[A] claim of privilege cannot be made as a blanket assertion of the privilege."). Likewise in this case, Jacobs' blanket assertion "that to the extent there's any responsive information to this topic, it's privileged and so we are not designating him to testify on that topic," Hagen Dep., Ex. D, 24:3-7, is improper and should be rejected by the Court.

Expanding on another point raised in *Baxter*, Plaintiffs note that the specific questions that could be asked in the present case do not necessarily require intrusion into the attorney-client relationship.

13

> Moreover, Baxter has represented that it "is not seeking to discover the substance of privileged communications" and that it "has no intention of asking BD's designated witness about *the substance of any opinions of counsel*" (Pl.'s Revised 3d Mot. to Compel, at 13 n.4; Pl.'s Reply, at 8-10). Baxter asserts that it will instead seek to obtain "testimony regarding the existence of [BD's patent clearance] policies, whether they were followed by BD, who was responsible for implementing them, when compliance with the policies occurred, and how that compliance was effectuated" (Pl.'s Reply, at 8)."

*Baxter*, 2019 U.S. Dist. LEXIS 125098, at \*21-22 (emphasis added). In the present case, Plaintiffs have no intention of asking Jacobs' Rule 30(b)(6) designee about the substance of counsel's opinions. Instead, Plaintiffs seek testimony regarding disciplinary actions and/or investigations that were either contemplated or actually undertaken by Jacobs, or any federal or state governmental entity, concerning acts and omissions of Jacobs' employees regarding their failure to ensure job-site safety and protect workers' health during the Kingston Ash Recovery Project. Pls.' Second Am. Notice of Dep., Topic 10, ECF No. 627. As in *Baxter*, specific questions might include: the existence of Jacobs' disciplinary policies, whether they were followed by Jacobs regarding the Coal Ash Recovery Project, who was responsible for implementing them, when compliance with these disciplinary policies occurred, and how that compliance was effectuated. *See Baxter,* 2019 U.S. Dist. LEXIS 125098, at \*21-22. And like the defendant in *Baxter*, Jacobs' "wholesale refusal to produce a witness to testify about relevant Rule 30(b)(6) topics is not the appropriate way to protect its privileged information." *Id*. at \*22 (citing *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, No. 3:13-CV-1047-CRS, 2016 U.S. Dist. LEXIS 192208, at \*11 (W.D. Ky. June 29, 2016) (finding that the plaintiff could "not preemptively, and in blanket fashion, invoke . . . privileges to cut off even the possibility of a Rule 30(b)(6) deposition as to" particular topics); *Merkin*, 283 F.R.D. at 698 ("Litigants usually cannot prohibit a 30(b)(6) deposition by arguing in advance that each and every question would trigger the disclosure of attorney-client and work production information."); *Bryant v. Mattel, Inc*., No. CV 04-09049

14

SGL(RNBx), 2007 U.S. Dist. LEXIS 102035, at *3 (C.D. Cal. July 2, 2007) (holding that defendant "could not make a blanket [privilege] objection and justify its refusal to produce a Rule 30(b)(6) designee on [a Rule 30(b)(6)] topic based on that blanket objection"). Jacobs' improper and premature claim of privilege and work-product deprives Plaintiffs of any meaningful way to explore Topic 10. *Id.* at *23 ("To permit BD to preemptively assert a blanket claim of attorney-client or work-product privilege for certain Rule 30(b)(6) topics would 'create[] an unworkable circumstance in which [Baxter] loses a primary means of discovery without a meaningful review of [BD's] claim of privilege.'") (quoting *SEC v. Kramer*, 778 F. Supp. 2d 1320, 1328 (M.D. Fla. 2011)). Therefore, even if the Court disagrees that Jacobs has waived any such claims of privilege, Jacobs' blanket claims of privilege and/or work-product should nevertheless be rejected.

### 3. Jacobs cannot establish a reasonable basis to shield inquiry into noticed Topic 10.

In addition, Jacobs' invocation of attorney-client privilege and the work-product doctrine is itself suspect. Plaintiffs assume Jacobs will claim that its in-house or retained counsel was involved, in some manner, in how Jacobs' disciplinary investigations are generally conducted—or for those that actually took place during the Kingston Project—as described in Topic 10. Even if that were the case, it would not necessarily implicate considerations of attorney-client privilege or the work-product doctrine.

> The fact that defendant hired an attorney to conduct an investigation and submit a report, does not *ipso facto* throw a blanket of confidentiality over all information regarding the termination of Mr. Ryder. Even if it is an attorney who initially "discovered" some relevant fact, that fact is not necessarily protected by attorney/client privilege or the work-product doctrine. To be sure, the mental impressions, conclusions, opinions, or legal theories of the attorney that were generated as a result of the attorney's investigation likely would be protected by either the work-product doctrine or the attorney/client privilege, or both. But it is very unlikely that the identity of witnesses having discoverable information would be protected from disclosure, notwithstanding that those witnesses were first discovered during an attorney's investigation.

15

> Factual information cannot be given "privileged" status merely because an attorney communicated the facts to the client or because the client communicated the facts to the attorney. For example, providing pre-existing documents to an attorney does not thereby render the documents protected by the attorney client privilege. The mere act of copying an attorney in a communication between nonattorneys does not protect the communication between the nonattorneys. However, communications between the attorney and the client, even when the parties are discussing factual information, are protected by the attorney client privilege. The factual information discussed by the attorney and the client is discoverable, but the Court will generally not permit a party to inquire into the nature of the communications made between the attorney and the client, and the Court generally does not permit the deposition of the attorney. Instead, the party conducting discovery is permitted to depose witnesses (including the client), and review documents which are available to both the parties and the attorneys but which do not constitute the communications between the client and the attorney.

*Underwood v. Nextel*, No. 2:03-CV-389, 2006 U.S. Dist. LEXIS 113748, at *4-6 (E.D. Tenn. Nov. 29, 2006) (quoting *Sinclair Oil Corp. v. Texaco, Inc.*, 208 F.R.D. 329 (N.D. Okla. 2002) (internal quotation marks omitted). Thus, even if the Court determines that the issue has not been waived, and even if the Court found it was interposed with sufficient specificity, Jacobs' attorney-client privilege or work-product claim should be rejected because it fails to demonstrate how either the attorney-client privilege or work-product doctrine are relevant to the subject matter in topic 10.

**D.     Jacobs' Refusal to Produce a Properly Prepared Corporate Designee is Tantamount to Producing No Witness at All.**

Even though the deposition was suspended almost immediately, Mr. Hagen still had time to reveal he was not properly prepared to testify as is required under Rule 30(b)(6). Regarding Topic 1:

> Q. Okay. Mr. Hagen, our first topic was: "Jacobs' corporate knowledge of the exposure of plaintiffs and other workers to coal fly ash during the Kingston Ash Recovery Project and any health effects caused by that exposure from January 2009 to the present," and that's one you are prepared to testify about; right?

16

A. Yes, *I am prepared to testify on that topic*.

Q. Do you have any knowledge about – or can you tell me anything about what Jacobs' experience was dealing with coal fly ash prior to taking on this project?

A. Candidly, I don't recall if the company had any specific experience in dealing with coal fly ash. It is possible that they did, *but I don't know and am not prepared to speak in substance because I don't know*.

Hagen Dep., Ex. D, 29:25-30:17 (emphasis added).[4] Then regarding Topic 2:

Q. When Jacobs took on the project at Kingston, what did it do to educate itself about the constituents in coal fly ash?

A. *I can't speak to that on behalf of the company. I don't know*.

*Id.* at 30:24-31:3 (emphasis added). And regarding Topic 3:

Q. When Jacobs took on the project, what did it do to educate itself about the potential health hazards of exposure to coal fly ash?

A. *I don't know. I can't speak to that because I don't know specifically what was done at that time*.

*Id.* at 31:4-9 (emphasis added). This lack of preparation compounds Jacobs' misconduct and clearly illustrates Jacobs' blatant disregard for this Court's clear Rule 30(b)(6) Order.

"An organization . . . that is served with a notice for a Rule 30(b)(6) deposition is obligated to produce a witness or witnesses knowledgeable about the subjects described in the notice and to prepare the witness or witnesses to testify not simply to their own knowledge, but the knowledge of the corporation." *Janko Enters. v. Long John Silver's, Inc.*, No. 3:12-CV-345-S, 2014 U.S. Dist. LEXIS 185334, at * 12 (W.D. Ky. Apr. 3, 2014)). "Rule 30(b)(6) requires an organization to

---

[4] At that point Jacobs' counsel objected claiming the question went "beyond the scope of Topic 1." Hagen Depo 30:19-20. The time period described in Topic 1 spanned from "January 2009 to the present." Jacobs did not enter into its contract with TVA until February 6, 2009. Feb. 6, 2009 TVA-Jacobs Contract (attached as **Exhibit F**). Topic 1 expressly notified Jacobs that Plaintiff intended to inquire about its knowledge *prior* to its engagement by TVA (January 2009), so the question did not, in fact, exceed the scope of the noticed Topic.

identify a person knowledgeable on a noticed topic and to prepare that person to testify as to that topic, thus binding the entity." *Apex Bank v. Rainsford*, No. 3:19-CV-130-TRM-HBG, 2020 U.S. Dist. LEXIS 174689, at *2 (E.D. Tenn. Sep. 23, 2020) (quoting *Prasad v. George Washington Univ.*, 325 F.R.D. 1, 6 (D.D.C. 2018)). "The production of an unprepared witness is tantamount to failure to appear and warrants the imposition of sanctions." *Premiertox 2.0, Inc. v. Coventry Health & Life Ins. Co.*, No. 1:15-CV-00127-GNS-HBB, 2019 U.S. Dist. LEXIS 85017, at *14 (W.D. Ky. May 21, 2019) (citing *Martin Cnty. Coal Corp. v. Universal Underwriters Ins. Servs.*, No. 08-93-ART, 2010 U.S. Dist. LEXIS 118722, at *12 (E.D. Ky. Nov. 8, 2010)).

The quoted testimony reveals Jacobs wholly failed to fulfill its obligation to provide a witness prepared to give testimony about the noticed Topics. An answer of "I don't know" is not acceptable during a properly noticed 30(b)(6) deposition. *See Apex Bank*, 2020 U.S. Dist. LEXIS 174689, at *2. The transcript makes it clear that Mr. Hagen was simply instructed to refer to Jacobs' prior testimony references as his answers to any questions and had done nothing else to prepare to give substantive responses regarding Topics 1 through 10.[5]

---

[5] Hagen Dep., Ex. D, 9:22-10:2 ("Q. What do you understand your role to be here today? A. I understand my role to be representing Jacobs and confirming that it is adopting certain testimony and other documents in response to some of the topics raised, and in other instances, I'll be testifying directly on behalf of Jacobs relative to some of the topics raised."); *see also id.* at 42:9-25 (MR. MODLIN: Well, I am -- obviously. What I am saying, though, is that Mr. Hagen is ready, willing, and able to testify as to the substance of those other topics. And, perhaps, for the record, I should identify the topics so it's clear. So the topics where Jacobs is adopting prior testimony as its corporate testimony are 1, 2, 3, 4, 5, 7, 8, 9, and 12. As to the other topics identified in the document I sent you, with the exception of the one topic where we have objected on grounds of privilege, Mr. Hagen is prepared to testify as to the substance of those topics. The topic objected to on privilege is Topic 10."); *id.* at 44:13-45:2 ("MR. SILVEY So in actuality, Mr. Hagen is prepared to give testimony on 6, 11, 12, 13, 15, 17, 18, 19, and 22; is that accurate? MR. MODLIN: With the exception of 17, which, as I mentioned, had already been resolved through meet-and-confer, through other means. MR. SILVEY: Okay. But are -- with the exception, then, of 17; is that correct? The ones he's prepared to testify about are 6, 11, 12, 15, 18, 19, and 22? MR. MODLIN: Why don't I just go through them since I didn't catch all of the ones you said. But the ones that he would testify to are 6, 11, 12, 13, 15, 18, 19, 22.").

## II.     SANCTIONS THAT SHOULD BE IMPOSED

Solely due to Jacobs' obstructionist gamesmanship regarding the Rule 30(b)(6) deposition scheduled for January 21, 2021, Plaintiffs' counsel was required to engage in additional and unnecessary motion practice and expend time and resources on issues already addressed and resolved by the Court's Rule 30(b)(6) Order. Jacobs' conduct merits the imposition of sanctions pursuant to Rule 37.[6] This Rule states in pertinent part "[i]f a party . . . or a witness designated under Rule 30(b)(6) . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). Sanctions can include a variety of remedies. Fed. R. Civ. P. 37(b)(2)(a)(i)-(vii). In addition, the Court can award reasonable expenses, including attorney's fees. Fed. R. Civ. P. 37(b)(2)(C). Jacobs' obstructive conduct here inarguably falls within the plain language—and spirit—of Rule 37.

In addition, "[t]he Court also has the inherent authority to sanction bad-faith conduct in litigation." *Chambers v. NASCO, Inc*., 501 U.S. 32, 49 (1991). The Court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at

---

[6] Plaintiffs are cognizant of the Court's adherence to the meet-and-confer requirements of Rule 37(a)(1). *E.g.*, *Plate, LLC v. Elite Tactical Sys., LLC*, No. 3:18-CV-265-CLC-HBG, 2020 U.S. Dist. LEXIS 159083, at *50 (E.D. Tenn. Sep. 1, 2020). Plaintiffs would point out, however, that their current motion does not concern a "discovery dispute" of the type requiring an additional meet-and-confer requirement of Rule 37(a), even though it concerns a discovery matter. There is no "dispute." Jacobs moved the Court to limit the Rule 30(b)(6) deposition to prior testimony or written interrogatories regarding the at-issue topics. The Court entered an Order denying Jacobs' request. The Rule 30(b)(6) Order is now the law of the case, absent an appeal or a properly filed motion to reconsider. Any "discovery dispute" was already resolved. Plaintiffs now simply ask the Court to enforce its Order. Plaintiffs' current motion, therefore, falls under Rule 37(b) which contains no meet-and-confer requirement.
    However, even if the Court considers this to be a "discovery dispute" within the purview of Rule 37(a)(1), Plaintiffs submit that the lengthy discussions between counsel during the deposition fulfilled any requisite meet-and-confer obligations, Hagen Dep., Ex. D, 23:17-24:22, 31:16-49:23, making it obvious that any further discussions would be futile. *See EEOC v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 794 n.2 (E.D. Tenn. 2016) ("[T]he Court finds that a meet and confer at this stage in the dispute would be futile.").

45-46 (quoting *Alyeska Pipeline Srv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 (1975)). The Sixth Circuit has upheld district courts' use of their inherent authority to sanction conduct "tantamount to bad faith." *Robert Bosch LLC v. A.B.S. Power Brake, Inc*., No. 09-14468, 2011 U.S. Dist. LEXIS 49713, at *5-6 (E.D. Mich. May 10, 2011) (quoting *First Bank v. Hartford Underwriters Ins. Co*., 307 F.3d 501, 519 (6th Cir. 2002)).

 As illustrated in the transcript, Jacobs' obstruction during the deposition demonstrates that it unquestionably failed to obey the Court's Rule 30(b)(6) Order to provide or permit discovery in the form of a properly prepared corporate designee ready to testify about the allowed topics. When faced with a less egregious set of circumstances in another case arising out of the Kingston Ash Spill, this Court did not hesitate to order sanctions. *Roane Cnty. v. Jacobs Eng'g Grp., Inc*., No. 3:19-CV-206-TAV-HBG, 2020 U.S. Dist. LEXIS 118820 (E.D. Tenn. July 7, 2020). There, the Court found that the plaintiffs "violated the Court's previous May 29, 2020 Order by failing to timely respond to Defendants' discovery requests or file a motion requesting an extension of time to complete discovery." *Id*. at *4. The Court ordered sanctions, ordering the plaintiffs "to respond to discovery on or before June 29, 2020" and "find[ing] an award of attorney's fees appropriate." *Id.* at *6-7. The Court noted that "[w]hile Plaintiffs did not act in bad faith, they failed to comply with the Court's previous Order. . . Therefore, the Court finds sanctions appropriate in the present case." *Id.* at *6. Here, the Court ordered Jacobs to provide a witness prepared to testify about Topics 1 through 5 and 7 through 10. Rule 30(b)(6) Order 7-8, 12. Jacobs failed to comply with that Order. Thus, these circumstances substantially mirror those in *Roane County*. And, like there, the Court should find sanctions appropriate under these circumstances.

## A. Substantive Sanctions

The question then turns on how to determine what sanctions are appropriate in light of Jacobs' willful refusal to abide by the Court's Rule 30(b)(6) Order.

> In determining whether sanctions are appropriate pursuant to Rule 37, the Sixth Circuit has utilized four factors. *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997). Specifically, the Sixth Circuit has explained as follows:
>
>> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered.

*Roane Cnty.*, 2020 U.S. Dist. LEXIS 118820, at *5. There, the Court ordered the plaintiffs to produce discovery responses by a date certain, reserving its ruling on "the issue of [the p]laintiffs' waiver of all objections." *Id.* at *6-7. Here, Plaintiffs suggest that the Court should, at the very least, find that Jacobs acted in bad faith by willfully refusing to comply with the plain language of the Rule 30(b)(6) Order. "A willful violation occurs whenever there is a conscious and intentional failure to comply with the court order." *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995). Jacobs should again be ordered to make a corporate designee available for a deposition on all topics allowed by the Court's prior Order within fourteen (14) days. Plaintiffs also suggest that the Court find Jacobs has waived any objections to the testimony as a result of its bad faith refusal to comply with the Rule 30(b)(6) Order. While more severe substantive sanctions are warranted, *e.g.,* Fed. R. Civ. P. 37(b)(2)(A)(i)-(iii), Plaintiffs' interests can be protected by lesser measures.

## B. Monetary Sanctions

In addition, Plaintiffs believe that an additional sanction in the form of reasonable expenses, including attorney's fees, is appropriate.[7] In *Roane County*, the Court stated:

> Lastly, given the circumstances, the Court finds an award of attorney's fees appropriate. *See* Fed. R. Civ. P. 37(b)(2)(C) (explaining that instead of or in addition to other sanctions, the court must order the disobedient party, the attorney, or both, to pay the reasonable expenses caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust). Accordingly, Plaintiffs **SHALL** pay Defendants' reasonable attorney's fees and costs incurred **for bringing this issue before the Court**.

*Roane Cnty.*, 2020 U.S. Dist. LEXIS 118820 at *7 (emphasis in original); *accord, e.g., Turfco Mfg. v. Turfco Pest Control, LLC*, No. 2:07-cv-02853-JPM-egb, 2009 U.S. Dist. LEXIS 93270, at *4 (W.D. Tenn. May 29, 2009) ("Here, the failure to obey the Court ordered discovery deadline, while not willful or in bad faith, was also not substantially justified. Accordingly the Magistrate Judge recommends that Defendant and his attorney pay the reasonable expenses, including attorney's fees, incurred by Plaintiff in responding to Plaintiff's Motion for Extension of Time and incurred by Plaintiff in filing and arguing the Motion for Sanctions."). And the Court awarded fees and costs despite determining that "Plaintiffs did not act in bad faith." *Id*. at *6. Here, Jacobs' conduct at least equals—and, as Plaintiffs assert, far exceeds—that of the plaintiffs in *Roane County*, thereby justifying an award under Rule 37(b)(2)(C). In particular, it would be appropriate for the Court to award Plaintiffs (1) all attorneys' fees relating to their preparation for and appearance at the January 21, 2021 deposition of Terry Hagen, which Jacobs' counsel cut short through its delaying tactics; and (2) all attorneys' fees relating to this Motion. Jacobs' misconduct

---

[7] Plaintiffs are submitting the Declaration of Mark E. Silvey in Support of Plaintiffs' Motion to Impose Sanctions, which relates to Plaintiffs' attorneys' fees, should the Court deem such an award appropriate.

22

alone necessitated Plaintiffs' bringing this issue before the Court. An award of costs and expenses should deter such acts in the future.

## <u>CONCLUSION</u>

"Parties . . . have an uncompromising duty to comply with court orders, which 'are not suggestions or recommendations, [but] are directives with which compliance is mandatory.'" *Warr v. Liberatore*, 437 F. Supp. 3d 259, 283 (W.D.N.Y. 2020) (quoting *U.S. Bank N.A. v. SFR Invs. Pool 1, LLC*, No. 2:16-cv-00576-GMN-NJK, 2018 U.S. Dist. LEXIS 17378, at *7 (D. Nev. Feb. 2, 2018)). Jacobs has failed to comply with this Court's clear order.

For the reasons stated above, Plaintiffs respectfully request that the Court: (1) enforce its Rule 30(b)(6) Order requiring Jacobs to produce a properly prepared witness to testify about all the allowed topics without reference to prior testimony or written interrogatories; (2) find that Jacobs has waived any objections to the deposition topics; (3) find that Jacobs either waived any privilege objection to Topic 10 or that it has not made a sufficient showing to justify the claimed privilege; and (4) award reasonable costs including attorney's fees to Plaintiffs.

Respectfully submitted,

**GREG COLEMAN LAW, P.C.**

By:*/s/ Mark E. Silvey*
Gregory F. Coleman, TN Bar No. 14092
Louis W. Ringger, III, TN Bar No. 33674
Adam A. Edwards, TN Bar No. 23253
Mark E. Silvey, TN Bar No. 13415
Justin G. Day, TN Bar No. 33267
William A. Ladnier, TN Bar No. 34316
800 S. Gay Street, Suite 1100
Knoxville, TV 37902
T: (865) 247-0080
F: (865) 522-0049
Email: greg@gregcolemanlaw.com
　　　　billy@gregcolemanlaw.com
　　　　adam@gregcolemanlaw.com
　　　　justin@gregcolemanlaw.com

23

will@gregcolemanlaw.com

*Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on January 25, 2021, a copy of the foregoing was filed electronically. Notice of filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access the filing through the Court's electronic filing system.

*/s/ Mark E. Silvey*
*Attorney for Plaintiffs*